**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**LISA T. PERRY,**

    **Plaintiff,**

v.                            **CASE NO. 2:15cv204**

**ISLE OF WIGHT COUNTY
and DELORES DARDEN,**

    **Defendants.**

## FIRST AMENDED COMPLAINT

For her First Amended Complaint against the Defendants, Isle of Wight County ("Isle of Wight") and Delores Darden, individually and in her official capacity as Board Supervisor of Isle of Wight ("Darden") (hereinafter collectively referred to as "the Defendants"), Lisa T. Perry ("Ms. Perry"), by counsel, states as follows:

### *NATURE OF THE CASE*

1. This is an action brought under the Family and Medical Leave Act of 1993 ("FMLA" or the "Act"), 29 U.S.C. § 2601, et seq. and is also an action for defamation and defamation per se under Virginia common law.

2. Defendant Isle of Wight terminated Ms. Perry in violation of her protected rights under the FMLA. Isle of Wight retaliated against Ms. Perry in violation of the FMLA for engaging in protected activity under the Act.

3. The Defendants made defamatory and false statements regarding Ms. Perry in an effort to injure her business and personal reputation in violation of Virginia law.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 2617(A)(2) for the FMLA claims. This Court has jurisdiction over the FMLA claims as the events complained of herein occurred in the Commonwealth of Virginia and concurrent jurisdiction exists under the Act. This Court also has jurisdiction over the defamation claims pursuant to 28 U.S.C. §1367 as the events complained of herein occurred in the Commonwealth of Virginia and the parties reside and/or conduct business in the Commonwealth of Virginia.

## PARTIES

5. Ms. Perry is a citizen of the United States and a resident of Smithfield, Virginia. She maintains her principal residence at 19227 Farm Road, Smithfield, Virginia 23430. At all times relevant to this action she was an "employee" and/or "eligible employee" as those terms are defined under the FMLA. She worked for Isle of Wight more than 1,250 hours for a full year preceding her termination and each of several years prior to that.

6. Isle of Wight is a county in Virginia. At all times relevant to this matter, Defendant Isle of Wight has been and is now, a "covered entity," "employer" and "person" as those terms are defined in the statute set forth herein.

7. Delores Darden is a resident of Smithfield, Virginia. At all times relevant to this matter, she was the Vice-Chairman of the Board of Supervisors of Isle of Wight.

## FACTS

8. Ms. Perry was employed by Isle of Wight as the Economic Development Director for over six and a half years preceding her termination in July of 2014.

9. At all times relevant to this action Ms. Perry excelled in her position.

10. On or about May 2, 2014, Ms. Perry was involved in an accident that injured her shoulder and resulted in a serious and adverse health condition.

11. As a result of injuries sustained in the accident, Ms. Perry missed significant time from work, but less than her FMLA allotment and leave available pursuant to Isle of Wight's policy and the FMLA. Prior to her designated and agreed upon FMLA leave return date, Defendant Isle of Wight wrongfully terminated Ms. Perry claiming she failed to return to work at the designated time. Isle of Wight failed to abide by their policies regarding FMLA leave and also the FMLA itself when it wrongfully denied Ms. Perry her leave entitlement under the FMLA by terminating her.

12. Ms. Perry received treatment for her shoulder injury throughout May and June, 2014, while generally keeping up her work schedule.

13. On June 26, 2014, Ms. Perry's orthopedist, Dr. Doug Boardman, diagnosed her with adhesive capsulitis, also known as "frozen shoulder" which qualifies as a serious injury and/or serious health condition under the Act. His prescription included a lengthy medical leave.

14. Ms. Perry applied for FMLA leave commencing June 27, 2014, to end on July 31, 2014 "with doctor's approval."

15. On July 3 and 11, 2014, Dr. Boardman and Ms. Perry provided Isle of Wight with written information about the condition causing her absence.

16. On July 14, 2014, Isle of Wight informed Ms. Perry that her leave application was approved.

17. The use of Ms. Perry's FMLA leave allotment began on June 27, 2014. As of the time of her wrongful termination on August 1, 2014, Ms. Perry had used only 25 days of her allotted 60 days of FMLA leave.

18. On July 31, 2014, Ms. Perry had her second appointment with Dr. Boardman. In part because of the need to discontinue medication, including pain medications, over the weekend (July 31 was a Thursday and Ms. Perry's medication prescriptions would not conclude until the weekend), Dr. Boardman extended her medical leave, making her return date Monday, August 4, 2014.

19. Ms. Perry was under the impression that Dr. Boardman's orders would be communicated to Isle of Wight that day.

20. The Department of Labor regulations in place to support the administration and enforcement of the FMLA state as follows:

> *Intent to Return to Work*.
>
> (a) An employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work. The employer's policy regarding such reports may not be discriminatory *and must take into account all of the relevant facts and circumstances* related to the individual employee's leave situation.
>
> (b) If an employee gives unequivocal notice of intent not to return to work, the employer's obligations under FMLA to maintain health benefits (subject to COBRA requirements) and to restore the employee cease. *However, these obligations continue if an employee indicates he or she may be unable to return to work but expresses a continuing desire to do so.*
>
> (c) It may be necessary for an employee to take more leave than originally anticipated. Conversely, an employee may discover after beginning leave that the circumstances have changed and the amount of leave originally anticipated is no longer necessary. An employee may not be required to take more FMLA leave than necessary to resolve the circumstance that precipitated the need for leave. *In both of these situations, the employer may require that the employee provide the employer reasonable notice (i.e., within two business days) of the changed circumstances where foreseeable.* The employer may also obtain information on such changed circumstances through requested status reports.
>
> 29 CFR §825.311 (emphasis added).

21. Moreover, Isle of Wight's FMLA leave policy states as follows:

4

>During FMLA leave the County may request that the employee provide recertification of a serious health condition at intervals in accordance with the FMLA.  In addition, during FMLA leave, the employee must provide the County with periodic reports regarding the employee's status and intent to return to work.  If the employee's anticipated return to work date changes and it becomes necessary for the employee to take more or less leave than originally anticipated, the employee must provide the County with reasonable advance notice (i.e., within 4 business days) of the employee's changed circumstances and new return to work date.  If the employee gives the County notice of intent not to return to work, the employee will be considered to have voluntarily resigned.

22. Ms. Perry returned to work on August 4, 2014, as directed by her physician and only a little more than one full business day after she learned of her change in circumstance.

23. When she returned to work on Monday, August 4, 2014, she was told that County policy was that she had resigned as of August 1, 2014, and her employment was terminated.

24. At the time of her termination, Defendant Isle of Wight was aware that Ms. Perry had sustained significant physical injuries that required treatment and care by her physician. They were further aware that Ms. Perry was entitled under the FMLA to leave and that these injuries required significant leave for treatment and recuperation and that she was out on such leave.

25. In terminating Ms. Perry, Defendant Isle of Wight intentionally and deliberately denied Ms. Perry her rights to FMLA leave and intentionally and deliberately retaliated against her for taking FMLA.

26. Subsequent to Ms. Perry's wrongful termination, Darden, individually and as a Board Supervisor of Defendant Isle of Wight County, made and published statements to a newspaper, *The Tidewater News,* regarding Ms. Perry's employment with Isle of Wight County that were defamatory and false.  These statements were as follows:

>(a) "Perry was due back to work last Friday [August 1], but she didn't show up or let anyone know why."

5

    (b) "Part of the leave agreement was that not returning to work as agreed meant that the job would not be held for her."

  27. Isle of Wight and Darden knew that Perry was out on FMLA leave. Isle of Wight and Darden knew, or should have known, that they had an obligation under the regulations promulgated by the Department of Labor to give her at least two business days to report her change in circumstance. Isle of Wight and Darden knew, or should have known, that Ms. Perry's return date had to be approved and cleared by a physician. Instead, the County wrongfully terminated her and Darden made the false and defamatory statements recited in the preceding paragraph. When Darden made the statements quoted in paragraph 26(a) and (b) above, she knew that the statements were false and/or were materially false in their implication, or acted with reckless disregard as to whether they were false or not, or impliedly so, as they plainly communicated that Ms. Perry acted irresponsibly, unreliably and simply did not show up for work.

  28. In any event, when Ms. Perry applied for FMLA leave she asked that her return date be August 1, 2014, "with doctor's approval". There was no doctor's approval for her to return to work by August 1, 2014. Accordingly, it is false to say "that Perry was due back to work last Friday." As to the statements set forth at paragraph 26(b), there was no "leave agreement" and there was no understanding that "not returning to work as agreed" meant that the job would not be held for her. Because there was no such agreement, this statement is false.

  29. Darden made the quoted statements in paragraph 26 to *The Tidewater News*, a newspaper with wide circulation, knowing the foregoing statements were defamatory and false or, at the very least, knowing them to be defamatory and acting wantonly, recklessly and negligently in failing to ascertain the facts on which the statements were based. *The Tidewater News* published these statements to its readership on or about August 6, 2014. These

6

publications were made by Darden willfully and with actual malice. Darden is a Board Supervisor for Isle of Wight County and made these publications individually and in the course and scope of her employment with Isle of Wight County. Readers of *The Tidewater News* easily inferred from these statements that Ms. Perry was professionally irresponsible or unreliable in failing to "show up [for work]" or "let[ting] anyone know why" she was absent. Readers of *The Tidewater News* easily inferred from these statements that Ms. Perry failed to honor her agreements, was unreliable and left her job irresponsibly and unprofessionally, without notice or explanation.

30. Darden's defamatory and false statements identified in paragraph 26, above, were published in *The Tidewater News* for the public to see. This was done by Darden, individually and as a Board Supervisor of Isle of Wight County, in an intentional and malicious effort to harm Ms. Perry's business and professional reputation. When Darden made these statements she knew them to be false or acted wantonly, recklessly and negligently in failing to ascertain the facts on which the statements were based.

31. As a result of the defamatory publications made herein, Ms. Perry's career with Isle of Wight County was destroyed and she suffered significant financial harm and harm to her reputation.

## COUNT I

### *Retaliation In Violation Of The FMLA*

32. All factual allegations set forth in this First Amended Complaint are incorporated into this Count by reference.

33. This Count is stated against Isle of Wight.

34. Ms. Perry was discharged by Defendant Isle of Wight in violation of the FMLA. Specifically, Ms. Perry availed herself of FMLA leave prior to her termination. The Defendant Isle of Wight terminated Ms. Perry in retaliation for her exercising rights under the FMLA.

35. Defendant Isle of Wight committed these violations of the FMLA willfully and in bad faith.

36. As a result of Defendant Isle of Wight's violation of Ms. Perry's rights guaranteed under the FMLA and its unlawful, intentional retaliation which resulted in the destruction of her career, Ms. Perry has suffered significant pecuniary losses including loss of past and future income, loss of seniority and benefits and loss of pension. Defendant Isle of Wight committed all violations alleged herein willfully, maliciously and in bad faith.

## COUNT II

### *Failure To Reinstate in Violation of the FMLA*

37. All factual allegations set forth in this First Amended Complaint are incorporated into this Count by reference.

38. This Count is stated against Isle of Wight.

39. After Ms. Perry's FMLA leave was complete, Defendant Isle of Wight refused to reinstate Ms. Perry into the position she held upon commencement of her FMLA leave.

40. Defendant Isle of Wight's failure to reinstate Ms. Perry to her position was intentional and violated the FMLA. As a result of Defendant Isle of Wight's violation of Ms. Perry's rights guaranteed under the FMLA and its unlawful, intentional discrimination against her, Ms. Perry has suffered significant pecuniary losses including loss of past and future income, loss of seniority and benefits and loss of pension.

41. Defendant Isle of Wight committed all violations alleged herein willfully, maliciously and in bad faith.

## COUNT III

### *Defamation*

42. All factual allegations set forth in this First Amended Complaint are incorporated into this Count by reference.

43. This Count is stated against Darden in her individual and official capacities.

44. Darden published false and defamatory information injuring Ms. Perry in her profession.

45. This false and defamatory information was published to persons inside and outside of Isle of Wight County.

46. These defamatory statements were published in bad faith and with actual malice. Darden made these statements knowing them to be false or made them with reckless disregard of whether they were false or not.

47. Darden's actions as set forth above were the legal, actual and proximate cause of the following damages suffered by Ms. Perry. These damages include loss of past income, loss of future income, loss of benefits as well as loss of reputation, mental anguish, humiliation, pain, suffering, anxiety and loss of quality of life. Ms. Perry has suffered total pecuniary damages in an amount not less than One Million Dollars ($1,000,000.00). She has suffered non-pecuniary damages in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00). Moreover, the Defendants' actions were intentional, willful, malicious, outrageous and made in bad faith and Ms. Perry is entitled to an award of punitive damages in the amount of $350,000.00.

## COUNT IV

### *Defamation Per se*

48. All factual allegations set forth in this First Amended Complaint are incorporated into this Count by reference.

49. This Count is stated against Darden in her individual and official capacities.

50. Darden published false and defamatory information which caused significant injury to Ms. Perry's professional reputation. These defamatory statements have significantly harmed her ability to make a living.

51. Darden's actions constitute both common law defamation and defamation per se.

52. Darden's actions as set forth above were the legal, actual and proximate cause of the damages suffered by Ms. Perry. These damages include loss of past income, loss of future income, loss of benefits as well as loss of reputation, humiliation, mental anguish, pain, suffering, anxiety and loss of quality of life. Ms. Perry has suffered total pecuniary damages in an amount not less than One Million Dollars ($1,000,000.00). She has suffered non-pecuniary damages in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00). Moreover, the Defendants' actions were intentional, willful, malicious, outrageous and made in bad faith and Ms. Perry is entitled to an award of punitive damages in the amount of $350,000.00.

WHEREFORE, Lisa T. Perry respectfully prays that this Court:

1) Order Defendant Isle of Wight County to institute and carry out policies, practices and programs which provide equal employment opportunities to qualified individuals and which eradicate the effects of past and present unlawful employment practices;

2) Order Defendant Isle of Wight County to reinstate her and to provide her with all such equitable relief as the Court deems appropriate, including the benefit of seniority and benefits lost;

3) For all counts set forth above, order Defendant Isle of Wight County to make Lisa T. Perry whole for all claims with appropriate lost earnings, future lost earnings and compensation for loss of future pensions and benefits with pre-judgment and post-judgment interest as applicable, in amounts to be proved at trial;

4) Order Defendant Isle of Wight County to pay Lisa T. Perry liquidated damages for Counts I and II in amounts at least equivalent to the economic loss proved, with pre-judgment and post-judgment interest as applicable;

5) Order Delores Darden to pay damages to Lisa T. Perry in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) as a result of sustaining the harm complained of herein on each of the defamation counts;

6) Order that the Defendant Delores Darden pay punitive damages to Lisa T. Perry in an amount not less than Three Hundred Fifty Thousand Dollars ($350,000.00);

7) Order Defendant Isle of Wight to pay Lisa T. Perry reasonable attorney's fees, expert fees and costs incurred in bringing and prosecuting the FMLA claims set forth herein with pre-judgment and post-judgment interest as applicable;

8) Order the Defendants to provide Lisa T. Perry all such other relief that the Court deems to be just.

***JURY TRIAL DEMANDED***

Plaintiff, Lisa T. Perry, requests a jury trial on all issues raised in this First Amended Complaint.

          Respectfully submitted,

          LISA T. PERRY


          By:    */s/ James H. Shoemaker, Jr.*


James H. Shoemaker, Jr., Esq., VSB No. 33148
Jason E. Messersmith, Esq., VSB No. 77075
Patten, Wornom, Hatten, & Diamonstein, LC
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: 757.223.4560
Facsimile: 757.223.4518
Email: jshoemaker@pwhd.com
Email: jmessersmith@pwhd.com

Cindra Dowd, Esq., VSB No. 33819
Richard J. Serpe, Esq., VSB No. 33340
Law Offices of Richard J. Serpe, P.C.
Crown Center, Suite 310
580 East Main Street
Norfolk, Virginia 23510-2322
Telephone: (757) 233-0009
Facsimile: (757) 233-0455
Email: cdowd@serpefirm.com
Email: rserpe@serpefirm.com

*Counsel for Plaintiff*


# **CERTIFICATE OF SERVICE**

   I hereby certify that on the 28<u>th</u> day of October, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jim H. Guynn, Jr., Esq., VSB No. 22299
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, VA 24153
Telephone: (540) 387-2320
Facsimile: (540)389-2350
Email: jimg@guynnwaddell.com

Mark C. Popovich, Esq., VSB No. 45414
County Attorney
17090 Monument Circle
P.O. Box 80
Isle of Wight, Virginia 23397
Telephone: (757) 365-1641
Email: mpopovich@isleofwightus.net

*Counsel for Defendants*

                                                 */s/ James H. Shoemaker, Jr.*
James H. Shoemaker, Jr., Esq. VSB No. 33148
Jason E. Messersmith, Esq., VSB No. 77075
Patten, Wornom, Hatten, & Diamonstein, LC
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: 757.223.4580
Facsimile: 757.223.4818
Email: jshoemaker@pwhd.com
Email: jmessersmith@pwhd.com