# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

LISA T. PERRY,

    Plaintiff,

v.                                      CIVIL ACTION NO. 2:15-cv-204

ISLE OF WIGHT COUNTY,

    Defendant.

## *MEMORANDUM OPINION AND ORDER*

This Memorandum Opinion and Order is issued after a bench trial in the above-styled matter to resolve Lisa T. Perry's ("Plaintiff") claim against the Isle of Wight County ("Defendant") for failing to reinstate Plaintiff in violation of the Family Medical Leave Act ("FMLA"). Plaintiff was employed by Defendant and was not reinstated to her position after her FMLA leave ended. For the reasons set forth herein, the Court **FINDS** Defendant liable for violating the FMLA and enters judgment for Plaintiff.

## I. PROCEDURAL HISTORY

On May 12, 2015, Defendant removed this action from Isle of Wight Circuit Court. ECF No. 1. On October 28, 2015, Plaintiff filed an Amended Complaint alleging that Defendant had engaged in (1) Retaliation in Violation of the FMLA and (2) Failure to Reinstate in Violation of the FMLA. ECF No. 16. On January 24, 2017, after full briefing by the parties, the Court granted in part and denied in part Defendant's Motion for Summary Judgment. ECF No. 48. The Court dismissed Count I of the Amended Complaint, leaving Count II as the only remaining claim of the Amended Complaint.

The Court held a bench trial on March 7, 2017. ECF No. 59. The parties have filed post-trial briefs and this matter is now ripe for judicial determination. The Court issues the following Findings of Fact and Conclusions of Law, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

## II. FACTUAL FINDINGS

### A. Stipulated Facts

The parties have stipulated to the following facts, which the Court accepts and finds:

1. On May 2, 2014, Plaintiff injured her shoulder by falling through a hatch on the deck of a large catamaran sailboat.

2. On approximately May 7, 2014, Plaintiff had an appointment with an orthopedic surgeon, Dr. Jason Smith. Dr. Smith took x-rays and informed Plaintiff she had a fracture in her upper left arm.

3. Dr. Smith prescribed Perry pain medication and instructed her to wear her arm in a sling for 30 days.

4. Except for taking off a few days at the end of May, 2014, Plaintiff worked through May and most of June.

5. On June 26, 2014, having obtained no relief, Plaintiff saw Dr. Douglas Boardman, who diagnosed Plaintiff with "frozen shoulder," or "immobility in the shoulder area." Dr. Boardman prescribed aggressive physical therapy, pain medication, scheduled a follow-up appointment for July 31, 2014 and recommended that Plaintiff take at least 30 days off from work.

6. From June 27, 2014 until July 31, 2014, Lisa Perry was entitled to FMLA leave. At the July 31, 2014, appointment with Dr. Boardman, Plaintiff was advised by Dr. Boardman

not to return to work until Monday, August 4th. Perry did not inform Defendant of this on July 31, August 1, August 2, or August 3 (August 2 and 3, 2014, were a Saturday and Sunday). Plaintiff contends she was entitled to leave on August 1, a Friday, and should have been allowed to return to work on August 4. Defendant disputes this and contends her leave ended on July 31.

7. Plaintiff had a salary and benefit package at the point at which her employment terminated worth, at least, $98,000 per year.

8. Plaintiff's Exhibits 1, 3, 5, 6 and 7 are authentic Isle of Wight documents and stipulated as admissible into the trial record without further testimony or support.

**B.     Additional Factual Findings**

The Court has made the following additional factual findings:

1. On July 2, 2014, Plaintiff filled out, signed, and submitted Isle of Wight County's "Request for Family/Medical Leave" form. In the space labeled "Date Leave Ends," Plaintiff wrote "7/31/14 *". Under that space, Plaintiff wrote, "* with doctor's approval." Def's Ex. 3; Trial Tr. 29:1-12, 108:4-25.

2. On July 9, 2014, Linda Tuck (Defendant's Human Resources Coordinator) called Plaintiff to discuss Plaintiff's FMLA leave. Plaintiff informed Ms. Tuck that she would be having an appointment with her orthopedic surgeon, Dr. Boardman, on July 31, 2014. Trial Tr. 32:24-33:25, 109:1-110:6.

3. On July 14, 2014, Dr. Boardman faxed Defendant a form certifying Plaintiff's FMLA leave. On the form, Dr. Boardman wrote that the probable duration of Plaintiff's condition was the end of July 2014. Dr. Boardman listed 7/31/14 as the date of Plaintiff's next appointment. Pl's Ex. 2; Trial Tr. 85:10-86:5.

3

4. On July 14, 2014, Defendant approved Plaintiff's request for FMLA leave and mailed Plaintiff two documents: the "Notice of Eligibility and Rights & Responsibilities," Pl's Ex. 3, and the "Designation Notice," Pl's Ex. 7. Trial Tr. 68:8-69:9.

5. Defendant considered Plaintiff's failure to appear at work on Friday, August 1, 2014 as a voluntary resignation from her position. Trial Tr. 46:5-11, 88:24-89:5.

6. In the afternoon of Friday, August 1, 2014, Mary Beth Johnson ("Ms. Johnson"), Defendant's Human Resources Director, drafted, signed, and mailed an employment termination letter to Plaintiff. Def's Ex. 1; Trial Tr. 62:11-63:2.

7. Plaintiff appeared for work on Monday, August 4, 2014. She was promptly informed that she had voluntarily resigned her position and that she had been sent a letter on Friday, August 1, 2014 informing her that her employment was terminated. Trial Tr. 18:19-20:20, 88:19-89:5.

### III. CONCLUSIONS OF LAW

1. The Family and Medical Leave Act ("FMLA") provides an eligible employee up to 12 weeks of leave per year "because of a serious health condition that makes the employee unable to perform the functions" of their position. 29 U.S.C. § 2612.

2. The FMLA guarantees that any employee who takes FMLA leave is entitled "[T]o be restored by the employer to the position of employment held by the employee when the leave commenced; . . . ." 29 U.S.C. § 2614.

3. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided" under the FMLA. 29 U.S.C. § 2615.

4. The FMLA allows employees who have suffered a violation of their FMLA rights to initiate civil actions. 29 U.S.C. § 2617.

5. Employers found in violation of the FMLA are liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation," interest on those lost wages and benefits, liquidated damages, and "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617.

6. "A plaintiff in an employment discrimination case must mitigate damages by diligently 'seeking and accepting new employment substantially equivalent to that from which he was discharged.' *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir.1985). Failure to diligently seek new employment precludes an award of back pay for the period during which employment was not sought. *See id.* The duty to mitigate is not without limits, however. For example, a plaintiff 'need not go into another line of work, accept a demotion, or take a demeaning position.' *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). The defendant bears the burden of demonstrating that the plaintiff has failed to fulfill the duty to mitigate. *See* Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir.1995)." *Miller v. AT & T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001).

7. The most desirable equitable remedy is reinstatement. *See Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1423 (4th Cir. 1991). When reinstatement is not appropriate, front pay may be used as an alternative. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir. 1998). A court considering awarding front pay must balance the need to remedy the

plaintiff's future losses with the duty to avoid providing an unjust "windfall" to the plaintiff. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 300 (4th Cir. 2009).

8. Title 29, Subtitle B, Chapter V, Subchapter C, Part 825, Subpart C of the Code of Federal Regulations governs the rights and obligations of employees and employers under the FMLA. 29 C.F.R. § 825.300 et seq.

9. 29 C.F.R. § 825.303 governs situations when an employee seeks to request a new period of unforeseeable FMLA leave.

10. 29 C.F.R. § 825.311 governs situations when an employee seeks to modify the length of her existing FMLA leave.

11. Section 5.12 of the Isle of Wight County Policy Manual ("Policy Manual") governs the rights and obligations of Isle of Wight County employees on FMLA leave, subject to the FMLA itself and the provisions of 29 C.F.R. § 825.300 et seq.

## IV. DISCUSSION

### A. FMLA Violation

Plainly stated, the crux of this case is whether it was lawful for Defendant to terminate Plaintiff's employment when Plaintiff failed to appear for work on August 1, 2014. Section 5.12 of the Policy Manual states, "If the employee does not return to work following the conclusion of FMLA leave, the employee will be considered to have voluntarily resigned." Because Defendant considered July 31, 2014 to be Plaintiff's last day of FMLA leave, Defendant considered Plaintiff's failure to appear for work on August 1, 2014 as Plaintiff's voluntary resignation from her employment.

Because the parties dispute whether July 31, 2014 was the binding and enforceable end date of Plaintiff's FMLA leave, resolution of this case would ordinarily require the Court to

6

examine the conflicting evidence and determine which party is correct. However, for the reasons more fully explained hereinafter, the Court need not make this determination because it would not alter the Court's conclusion in this case.

Plaintiff argues that two sections of the Code of Federal Regulations, and their corresponding subsections in Section 5.12 of the Policy Manual, permitted Plaintiff to inform Defendant of her need for more leave on Monday, August 4, 2014. One section (29 C.F.R. § 825.303 ("§ 825.303")) applies when an employee seeks to request a new period of unforeseeable FMLA leave. The other section (29 C.F.R. § 825.311 ("§ 825.311")) applies when an employee seeks to modify the length of her existing FMLA leave. In order to apply the correct rules, the Court must determine which of those situations is present in this case.

On Thursday, July 31, 2014, Dr. Boardman ordered Plaintiff not to return to work until Monday, August 4, 2014. Because Plaintiff was still on FMLA leave when Dr. Boardman informed her of this determination, this is clearly a situation in which an employee sought to modify the length of her existing FMLA leave. Therefore, this case is governed by § 825.311 and its corresponding subsection in Section 5.12 of the Policy Manual (under the "Required Documentation" heading). Section 825.303 and its corresponding subsection in Section 5.12 of the Policy Manual (under the "Requests for FMLA Leave" heading) do not apply to this case because Plaintiff was not seeking to initiate a new period of unforeseeable FMLA leave.

Again, Plaintiff argues that this federal regulation and its corresponding subsection in the Policy Manual permitted Plaintiff to inform Defendant of her need for more leave on Monday, August 4, 2014. Section 825.311(c) states, "It may be necessary for an employee to take more leave than originally anticipated. . . . [In this situation], the employer may require that the employee provide the employer reasonable notice (i.e., within two business days) of the changed

circumstances where foreseeable. The employer may also obtain information on such changed circumstances through requested status reports." § 825.311. According to the federal regulation, Defendant bears the responsibility of informing Plaintiff that she is required to provide "reasonable notice" of the changed circumstances that necessitate more leave than originally anticipated. The Court must determine whether Defendant has shown that it informed Plaintiff of this requirement.

Here, Defendant provided three documents to Plaintiff informing her of her responsibilities while on FMLA leave. From these documents, it is clear that Defendant informed Plaintiff that she was required to update Defendant about any changed circumstances that would necessitate her taking more FMLA leave.

The first document Defendant provided to Plaintiff, the Notice of Eligibility and Rights & Responsibilities, provides employers the opportunity to require updates from employees on FMLA leave. Specifically, the second page of that notice states, "[Y]ou will have the following responsibilities while on FMLA leave (only checked blanks apply): . . . ." One of the responsibilities in that section that Defendant could have imposed on Plaintiff states, "While on leave you will be required to furnish us with periodic reports of your status and intent to return to work every _____ (indicate interval of periodic reports, as appropriate for the particular leave situation)." Defendant's Human Resources personnel did not indicate an interval of periodic reports, nor did they place a "check mark" in the blank next to this sentence.

The second document Defendant provided to Plaintiff, the Designation Notice, states one requirement regarding updates: "The FMLA requires that you notify us as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown."

The third document Defendant provided to Plaintiff, the Policy Manual, states, "If the employee's anticipated return to work date changes and it becomes necessary for the employee to take more or less leave than originally anticipated, the employee must provide the County with reasonable advance notice (i.e., within 4 business days) of the employee's changed circumstances and new return to work date."

These documents, taken together, informed Plaintiff that she would be required to notify Defendant within 4 business days of any changed circumstances that extended her FMLA leave.

Regarding the disputed end date, it is clear that it does not matter whether July 31, 2014 was the enforceable and binding end date for Plaintiff's FMLA leave. If, as Defendant suggests, July 31, 2014 was the end date, then Plaintiff was still on FMLA leave when Dr. Boardman ordered her leave extended by 1 day. Therefore, according to the Policy Manual, Plaintiff had 4 business days from the time of her appointment with Dr. Boardman to inform Defendant of those changed circumstances and her need for 1 more day of FMLA leave. Because Plaintiff appeared for work on Monday, August 4, 2014, well before the 4-business-day deadline, Plaintiff complied with Defendant's requirements.

Defendant argues that it imposed one additional requirement on Plaintiff that she failed to meet. Defendant alleges that, on July 9, 2014, Plaintiff told Ms. Tuck that she would contact Ms. Tuck on July 31, 2014 and provide an update regarding her intent to return to work. The parties agree that Plaintiff did not make contact with any of Defendant's Human Resources personnel on July 31, 2014. Therefore, Defendant argues that Plaintiff cannot receive her 1-day FMLA leave extension because she failed to comply with the requirement that she update Ms. Tuck about the need for an extension on July 31, 2014 after her appointment with Dr. Boardman. Plaintiff

9

testified that she remembers the July 9 conversation with Ms. Tuck, but denies that she committed to providing any update on that date.

It is important to note that, crucially, neither of three documents Defendant provided to Plaintiff informs her that she will be required to give Defendant an update on or before July 31, 2014. The only evidence of this requirement is Ms. Tuck's testimony, which is contradicted by Plaintiff's testimony. Section 825.311 allows employers the option of requiring updates and status reports. It is Defendant's responsibility to show that it imposed such a requirement on Plaintiff. In the absence of more evidence that Defendant notified Plaintiff of this requirement, the Court will not impose it on Plaintiff.

The Court finds that Plaintiff complied with all the notice requirements imposed upon her by Defendant and the Code Federal Regulations. Therefore, in accordance with the protections provided by the FMLA, Plaintiff was entitled to reinstatement when she returned to work on Monday, August 4, 2014. Defendant violated the Plaintiff's rights under the FMLA when it terminated Plaintiff's employment on August 1, 2014.

**B. Damages**

Having established that Defendant violated Plaintiff's rights under the FMLA, the Court turns now to the issue of damages. Title 29 U.S.C. § 2617 ("§ 2617") contains the enforcement provisions of the FMLA and allows the Court to award both monetary damages and equitable relief. § 2617. Based on this statute, Plaintiff is requesting three things: lost salary/employment benefits, liquidated damages, and front pay. The Court will determine the appropriateness of each.

### 1. Lost Salary and Employment Benefits

Section 2617(a)(1)(A)(i) makes Defendant liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the [FMLA] violation; . . . ." § 2617. Here, the parties have stipulated that Plaintiff's salary and benefit package was worth approximately $98,000 per year at the point at which her employment terminated. ECF No. 43 at 2. Had Plaintiff been reinstated to her position in accordance with her rights under the FMLA, she would have earned approximately $296,634.08 in salary and benefits between the date of her termination and the date of this order.

Plaintiff is required to mitigate these damages by diligently pursuing employment opportunities that are comparable to the position from which she was discharged by Defendant. *Miller v. AT & T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001). Plaintiff testified that she attempted to mitigate damages by applying for 75 or more positions that were comparable to the position she held while employed by Defendant. Trial Tr. 22:9-26:17. She was not offered any of these positions. Plaintiff has earned approximately $20,973.75 since the time Defendant terminated her employment. After adjusting for mitigation, the Court finds defendant liable for lost salary and benefits in the amount of $275,660.33.

### 2. Liquidated Damages

Section 2617(a)(1)(A)(iii) also makes Defendant liable for liquidated damages, in an amount equal to the amount of Plaintiff's lost salary and benefits. § 2617. However, the statute allows a defendant to escape liability for liquidated damages by "prov[ing] to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title." *Id.*

Here, Defendant terminated Plaintiff's employment in the afternoon of Friday, August 1, 2014 because Plaintiff did not appear for work on that day and had not contacted Defendant on Thursday, July 31, 2014. Ms. Johnson, Defendant's Human Resources Director, knew Plaintiff had an appointment with Dr. Boardman on July 31, 2014. Pl's Ex. 2; Trial Tr. 85:10-86:5. Ms. Johnson knew that there was a possibility that Dr. Boardman would extend Plaintiff's FMLA leave during that appointment. Trial Tr. 83:16-19. Ms. Johnson knew that the Policy Manual permitted Plaintiff to notify Defendant of the changed circumstances within four business days of learning of the need for the leave. Trial Tr. 71:9-14. Nevertheless, Defendant's Human Resources Personnel barely waited one business day before concluding that she had voluntarily resigned and terminating her employment.

It is clear from the record that Defendant's Human Resources personnel gave non-mandated warnings and notices to other employees regarding the expiration of their FMLA leave, to ensure that the employees were apprised of their end date and did not accidentally "voluntarily resign". Trial Tr. 113:7-115:8, 117:10-118:1. It is also clear from the record that Defendant's Human Resources personnel and the County Administrator were keenly aware of the supposed end date of Plaintiff's FMLA leave, and that they coordinated on August 1, 2014 to monitor every possible mode of communication that Plaintiff might have used to check in with them. Trial Tr. 83:14-23.

The fact that Defendant's Human Resources personnel waited attentively for Plaintiff to contact them on August 1, 2014 and then quickly terminated her that same day was unreasonable, especially in light of Defendant's history of actively reaching out to their employees to avoid any accidental voluntary resignations. Therefore, the Court finds that Defendant has not proven, to the satisfaction of the court, that its violation of Plaintiff's rights

under the FMLA was in good faith. Accordingly, the Court finds Defendant liable for liquidated damages in the amount of $275,660.33.

### 3. Front Pay

Section 2617(a)(1)(B) also makes Defendant liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." § 2617. The goal of equitable relief is to compensate a plaintiff for potential future losses arising from the defendant's violation. "The appropriate method for addressing the difficult question of providing a remedy which anticipates potential future losses requires an analysis of all the circumstances existing at the time of trial for the purpose of tailoring a blend of remedies that is most likely to make the plaintiff whole. The beginning point . . . for preventing future loss is reinstatement." *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1423 (4th Cir. 1991).

"[N]otwithstanding the desirability of reinstatement, intervening historical circumstances can make it impossible or inappropriate." *Duke*, 928 F.2d at 1423. Such circumstances exist when there is "such animosity between the parties that any potential employer-employee relationship was irreparably damaged; . . . or when there was no comparable position available." *Id.* Here, the Court has found that Defendant has not adequately shown that it acted in good faith when it failed to reinstate Plaintiff. Additionally, Plaintiff has shown that her former position with Defendant has been filled. *See* ECF No. 66. Therefore, the Court finds that reinstatement is not an appropriate equitable remedy in this case.

Plaintiff argues that, in the absence of the possibility of reinstatement, the Court should award her front pay as a substitute for reinstatement. The U.S. Court of Appeals for the Fourth Circuit has stated the following:

> When reinstatement is not appropriate, then other remedies may be considered. We join virtually all circuits that have considered the subject in concluding that

> front pay is an available remedy to complete the panoply of remedies available to avoid the potential of future loss. . . . While reinstatement, which is clearly an equitable remedy, is the much preferred remedy, front pay may serve as a substitute or a complement. Because of the potential for windfall, however, its use must be tempered. It can be awarded to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment. If a plaintiff is close to retirement, front pay may be the only practical approach. The infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages. Its award, as an adjunct or an alternative to reinstatement, must rest in the discretion of the court in shaping the appropriate remedy.

*Duke*, 928 F.2d at 1423-24. Although *Duke* discussed front pay in the context of violations of the Age Discrimination in Employment Act, the same legal standards apply to violations of the FMLA. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir. 1998) ("In *Duke*, we held that front pay, as an alternative or complement to reinstatement, is an equitable remedy . . . . We find no reason to deviate from that rule in the context of the FMLA.").

The Court's first task is to determine whether it should award front pay at all. "The appropriate method for addressing the difficult question of providing a remedy which anticipates potential future losses requires an analysis of all the circumstances existing at the time of trial for the purpose of tailoring a blend of remedies that is most likely to make the plaintiff whole." *Duke*, 928 F.2d at 1423.

Plaintiff testified that, despite her best efforts, she has not been able to obtain employment comparable to the position from which she was discharged. The record reflects that Plaintiff has no college degree and achieved her Director position through years of learning on the job. Therefore, the Court finds that it will be inordinately difficult for Plaintiff to obtain a position comparable to the one from which she was discharged. Plaintiff also testified that she planned to work for Defendant for approximately 9 more years before retiring at age 65. Trial

Tr. 22:4-8. Defendant's actions have prevented Plaintiff from doing so. Accordingly, the Court finds that front pay is necessary to make Plaintiff whole.

Having determined that front pay is necessary, the Court must now determine what amount to award in front pay. The Fourth Circuit has stated the following with regard to determining a front pay award:

> Future wages are often determined with reasonable certainty and awarded as legal damages in circumstances where the earning capacity of a plaintiff is destroyed or damaged. In circumstances, however, where employment is terminated without destroying the capacity to work, the nature and extent of injury is nearly indeterminable. The broad array of potential circumstances of a terminated employee's future income makes any attempt at finding damages a speculative venture. The question of whether the discharged employee will ever work again despite his best efforts or will obtain gainful employment in two years, or immediately, is not something that is within the realm of fact finding.

*Duke*, 928 F.2d at 1423. Accordingly, the Court, in awarding front pay, must compensate Plaintiff's future losses while also ensuring that it does not become too much of "a speculative venture." *Id.* "Under one scenario of future events, the plaintiff could be left without a remedy and under another the plaintiff could end up with a windfall. In either case, an injustice is done to one party or the other." *Id.*

Although Plaintiff testified that she planned to work for Defendant for 9 more years, the Court cannot state with certainty that those plans would have come to fruition. Plaintiff has requested front pay in the amount of $196,000.00, equivalent to 2 years' salary and benefits. The Court finds that 2 years' salary and benefits appropriately balances the need to remedy the plaintiff's future losses with the duty to avoid providing an unjust "windfall" to the plaintiff. Therefore, the Court finds defendant liable for front pay in the amount of $196,000.00.

The Court finds that the situation presented in this case is different from that presented in *Dotson v. Pfizer, Inc.*, a case cited and discussed by both parties. ECF Nos. 62, 65, 66. In

*Dotson*, the defendant had violated the plaintiff's rights under the FMLA, and the trial court had awarded back pay and liquidated damages. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 290 (4th Cir. 2009). However, the trial court had declined to award the plaintiff front pay. *Id.* at 292. There, the plaintiff had acquired a comparable employment position within three years of being discharged, was relatively young when he was discharged, was highly educated, and was requesting 15 years of front pay. *Id.* at 300. The trial court said that it would have been inclined to award front pay for a more limited period of time, such as 3 years, had the plaintiff not acquired a job in that time. *Id.* The Fourth Circuit held that the trial court's refusal to grant front pay was not an abuse of discretion. *Id.* at 301.

Here, Plaintiff has not been able to obtain a comparable employment position, was 56 years old when she was discharged, has no college degree, and is requesting 2 years of front pay. Plainly stated, Plaintiff's situation is altogether different from that of the plaintiff in *Dotson*. Therefore, the Court does not find that *Dotson* precludes the award of front pay in this case.

## V. CONCLUSION

For the foregoing reasons, the Court **FINDS** Defendant liable for violation Plaintiff's right to reinstatement under the FMLA. Accordingly, **JUDGMENT IS ENTERED FOR PLAINTIFF** and Plaintiff is **AWARDED $747,320.66.**

The Clerk is **DIRECTED** to send a copy of this Order to the parties and counsel of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 10, 2017

/s/
Raymond A. Jackson
United States District Judge